E-filing

1   SEYFARTH SHAW LLP
    Lawrence E. Butler (State Bar No.: 111043)
2   560 Mission Street, Suite 3100
    San Francisco, California 94105
3   Telephone: (415) 397-2823
    Facsimile: (415) 397-8549
4
    Attorneys for Defendant
5   METROPOLITAN LIFE INSURANCE COMPANY

6

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10  CHRISTOPHER ROBBINS                )    Case No.
                                       )
11              Plaintiff,             )    DEFENDANT METROPOLITAN LIFE
                                       )    INSURANCE COMPANY'S NOTICE
12          v.                         )    OF REMOVAL TO THE UNITED
                                       )    STATES DISTRICT COURT
13  METROPOLITAN LIFE INSURANCE        )
    COMPANY, LIFE INSURANCE COMPANY    )
14  OF NORTH AMERICA ; and DOES 1 through )
    50, inclusive.                     )
15                                     )
                Defendants.            )
16

17          TO THE CLERK OF THE ABOVE-CAPTIONED COURT:

18          PLEASE TAKE NOTICE that defendant Metropolitan Life Insurance Company

19  ("MetLife") hereby removes the above-entitled action from the Superior Court of the State of

20  California in and for the County of Alameda to the United States District Court for the Northern

21  District of California pursuant to 28 U.S.C. Sections 1331, 1441 (b), and 29 U.S.C. Section 1132.

22  MetLife hereby files this Notice in support of removal.  MetLife makes the following showing in

23  support of this removal:

24                  **PLEADING AND PROCEEDINGS TO DATE**

25          1.      Plaintiff Christopher Robbins filed the complaint in this action in the Superior

26  Court of the State of California in and for the County of Alameda on June 18, 2004. In that

27  Court, this case bears the number RG04161449.  True and correct copies of all state court

28

    Defs. Notice of Removal; Case No.: _____

1   pleadings received by MetLife to date are attached hereto as Exhibit A, pursuant to 28 U.S.C.
2   §1446(a).

3   2.    The first date upon which MetLife received a copy of said summons and
4   complaint was August 17, 2004 when it was served with copies of the Summons and complaint
5   through its registered agent for service in the State of California, CT Corporation.

6   3.    MetLife is informed and believes, and thereon alleges, that Defendant Life
7   Insurance Company of North America ("LINA") was first served with the complaint on
8   September 17, 2004 and that LINA will file a joinder in this removal on the date MetLife
9   removes this matter.

10   4.    CIGNA is not a legal entity with the capacity to sue or be sued and, therefore, is
11   not a proper party to this action; nonetheless, CIGNA Group Insurance joins in the removal of
12   this action.

13   **FEDERAL QUESTION JURISDICTION**

14   5.    The district courts of the United States have original jurisdiction over an action
15   founded on a claim of right arising under the Employee Retirement Income Security Act of 1974
16   as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*. ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1)
17   confers concurrent jurisdiction upon the district courts of the United States over claims initiated
18   by plan participants or beneficiaries to recover benefits or to enforce their rights under employee
19   welfare benefit plans governed by ERISA.

20   6.    Plaintiff Christopher Robbins ("Plaintiff") was employed by United Airlines.
21   United Airlines established and maintains an employee welfare benefit plan, entitled "United
22   Airlines Employee Welfare Benefit Plan" (the "Plan"), as defined under ERISA § 3(1), 29
23   U.S.C. § 1002(1). A true and correct copy of the Summary Plan Description for Management
24   Employees in the United Airlines Employee Welfare Benefit Plan in which Plaintiff is a
25   participant is attached hereto as Exhibit B. Plaintiff was a participant in the Plan. The long term
26   disability ("LTD") benefits available under the Plan was earlier funded by a group insurance
27   policy issued by LINA to United Airlines and subsequently funded by a group insurance policy

28   

2

Defs. Notice of Removal; Case No.: _____-

1    issued by MetLife. Under the terms of the Plan, MetLife serves as the claims administrator for
2    all LTD benefit claims submitted by Plan participants and beneficiaries. This action arises by
3    virtue of Plaintiff's claim of entitlement to long term disability benefits and attorneys' fees under
4    the terms of the Plan, pursuant to ERISA §§ 502(a)(1)(B) and (g), 29 U.S.C. § 1132(a)(1)(B) and
5    (g). Accordingly, this action is governed by ERISA.

6        7.    By his complaint, Plaintiff seeks long term disability benefits and attorneys' fees
7    through the state law theories of Breach of Insurance Contract, Breach of Covenant of Good
8    Faith and Fair Dealing, Fraud, Negligent Infliction of Emotional Distress, Intentional Infliction
9    of Emotional Distress and Violation of California Business and Professions Code Section 17200
10   et seq., arising out of MetLife's denial of his long term disability benefit claim. These claims for
11   relief relate directly to Plaintiff's claim for LTD benefits under the Plan.

12       8.    ERISA provides an exclusive federal cause of action for participants or
13   beneficiaries who bring actions relating to the recovery of benefits, including the claims alleged
14   in Plaintiff's complaint. As a result, ERISA preempts all state law claims which relate to the
15   Plan and are asserted by Plaintiff in his complaint. *Aetna Healthcare, Inc. v. Davila*, 542 U.S.
16   __, 2004 U.S. LEXIS 471 (USSC, June 21, 2004); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41,
17   54 (1987); *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 897 (9th Cir. 1990).

18       9.    Causes of action filed in state court that are preempted by ERISA and fall within
19   the scope of ERISA § 502(a) may be removed to federal court by Defendants, pursuant to 28
20   U.S.C. § 1441(b), even if the defense of ERISA preemption does not appear on the face of the
21   complaint. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66-67 (1987). Accordingly, this
22   Court has federal question jurisdiction to hear this matter.

23   **VENUE**

24       10.    This is a suit of a wholly civil nature brought in a California court. The action is
25   pending in Alameda County and, accordingly, under 28 U.S.C. §§ 84(a), 1441(a) and 29 U.S.C.
26   § 1132(e)(2), the United States District Court for the Northern District of California is the proper
27   forum for removal.

28

3

Defs. Notice of Removal; Case No.: _____-

1     11.    This case was removed within thirty (30) days after August 17, 2004, when

2   MetLife first received notice of the action by service of the summons and complaint. This

3   Notice is therefore timely filed within the time period provided in 28 U.S.C. § 1446(b).

4        WHEREFORE, Defendants pray that the above action now pending against it in the

5   Superior Court of the State of California in and for the County of Alameda, Case No.

6   RG04161449, be removed therefrom to this Court.

7

8   DATED: September ⁄5, 2004                SEYFARTH SHAW LLP

9

10                                  By _____
                                         Lawrence E. Butler
11                                  Attorneys for Defendant
                                    METROPOLITAN LIFE INSURANCE
                                    COMPANY
12

13   SF1 28189342.1 / 19200-000179

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          4
     Defs. Notice of Removal; Case No.: _____-

Exhibit A

CT System

**Service of Process Transmittal Form**

Los Angeles, California

08/18/2004

**Via Federal Express (Overnight)**

AUG 1 9 2004

TO: Lowell L Jacobs Chief Counsel - Litigation
Metropolitan Life Insurance Company
1 MetLife Plaza
27-01 Queens Plaza North
Long Island City, NY 11101

## RE: PROCESS SERVED IN CALIFORNIA

**FOR**     Metropolitan Life Insurance Company Domestic State: NY

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| 1. TITLE OF ACTION: | Christopher Robbins vs Metropolitan Life Insurance Company, et al |
| 2. DOCUMENT(S) SERVED: | Summons, Complaint |
| 3. COURT: | Superior Court of California, County of Alameda<br>Case Number RC104161449 |
| 4. NATURE OF ACTION: | Complaint for alleged breach of contract. |
| 5. ON WHOM PROCESS WAS SERVED: | CT Corporation System, Los Angeles, California |
| 6. DATE AND HOUR OF SERVICE: | By Process server on 08/17/2004 at 15:15 |
| 7. APPEARANCE OR ANSWER DUE: | Within 30 days |
| 8. ATTORNEY(S): | Thomas E. Fraysse, Esq./Kennth J. McCarthy, Esq./James T . Gotch, Esq.<br>Knox Ricksen LLP<br>510-285-2500<br>2101 Webster Street, Suite 650<br>Oakland, CA 94612-3069 |

9. REMARKS:

| | |
|---|---|
| SIGNED | CT Corporation System |
| PER | Jere Keprios /MS |
| ADDRESS | 818 West Seventh Street<br>Los Angeles, CA 90017<br>SOP WS 0006540604 |

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

1    Thomas E. Fraysse, Esq. SBN 104436
2    Kenneth J. McCarthy, Esq. SBN 120875
    James T. Gotch, Esq. SBN 125681
3    KNOX RICKSEN LLP, Attorneys at Law
    2101 Webster Street, Suite 650
4    Oakland, California 94612-3069
    Telephone: (510) 285-2500
5    Facsimile: (510) 285-2505

6    Attorneys for Plaintiff
    CHRISTOPHER ROBBINS

7

8

9

10         SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

11

12    CHRISTOPHER ROBBINS,       No. RG04161449

13          Plaintiff,      **COMPLAINT FOR DAMAGES**
                         **(BREACH OF CONTRACT,**
14       v.                   **BREACH OF THE COVENANT**
                          **OF GOOD FAITH AND FAIR**
15    METROPOLITAN LIFE INSURANCE    **DEALING, FRAUD, NEGLIGENT**
    COMPANY, LIFE INSURANCE        **INFLICTION OF EMOTIONAL**
16    COMPANY OF NORTH AMERICA,    **DISTRESS, INTENTIONAL**
    CIGNA, and DOES 1 through 50, inclusive,   **INFLICTION OF EMOTIONAL**
17                            **DISTRESS, AND VIOLATION OF**
         Defendants.          **CALIFORNIA BUSINESS AND**
18                            **PROFESSIONS CODE SECTION 17200**
                           **ET. SEQ.)**
19
                           General Jurisdiction
20    Plaintiff CHRISTOPHER ROBBINS alleges:    SUMMONS ISSUED

21                 **GENERAL ALLEGATIONS**

22      1.     Plaintiff CHRISTOPHER ROBBINS (hereinafter "ROBBINS" or plaintiff) is, and at

23   all times herein relevant was, a resident of the County of Alameda, State of California.

24      2.     Plaintiff is informed and believes, and thereon alleges, that at all times herein

25   mentioned, defendant METROPOLITAN LIFE INSURANCE COMPANY was a corporation

26   licensed and authorized to transact the business of insurance in the State of California, and that it has

- 1 -

COMPLAINT FOR DAMAGES

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2101 WEBSTER STREET, SUITE 650
OAKLAND, CALIFORNIA 94612-3069
TEL: (510) 285-2500

FILED
ALAMEDA COUNTY

JUN 1 8 2004

ARTHUR SIMS, Exec. Off./Clerk
By _____




1    regularly conducted business in the County of Alameda, State of California.

2        3.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

3    mentioned, defendant LIFE INSURANCE COMPANY OF NORTH AMERICA was a corporation

4    licensed and authorized to transact the business of insurance in the State of California, and that it has

5    regularly conducted business in the County of Alameda, State of California.

6        4.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

7    mentioned, defendant CIGNA was a corporation licensed and authorized to transact the business of

8    insurance in the State of California, and that it has regularly conducted business in the County of

9    Alameda, State of California.

10        5.    The true names and capacities, whether individual, corporate, associate or otherwise,

11    of defendants DOES 1 through 50, inclusive, are unknown to plaintiff, who therefore sues said

12    defendants by such fictitious names. Plaintiff is informed and believes and on such information and

13    belief alleges that each of the defendants sued herein as a DOE is legally responsible in some manner

14    for the events and happenings referred to herein, and plaintiff will ask leave of this court to amend

15    this complaint to insert their true names and capacities in place and instead of the fictitious names

16    when the same become known to her.

17        6.    At all times herein relevant, defendants, and each of them, were the agents and

18    employees of each of the remaining defendants, and were at all times acting within the purpose and

19    scope of said agency and employment, and each defendant has authorized, ratified or approved the

20    acts of his agent.

21        7.    Plaintiff is informed and believes, and thereon alleges, that at all times herein relevant,

22    METROPOLITAN LIFE INSURANCE COMPANY, LIFE INSURANCE COMPANY OF NORTH

23    AMERICA, CIGNA, and/or DOES 1 through 20, inclusive (hereinafter collectively referred to as

24    "defendants"), entered into an agreement to provide long term disability income policies, as well as

25    the processing of claims made under such policies. At all times herein relevant, said defendants were

26    acting within the purpose and scope of the agreement, and each defendant has authorized, ratified or

- 2 -

COMPLAINT FOR DAMAGES

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2105 WEBSTER STREET, SUITE 300
OAKLAND, CALIFORNIA 94612-3024
TEL: (510) 285-2500



1    approved the acts of each defendant in connection with the agreement.

2        8.    At all times herein relevant, ROBBINS was enrolled in a long term disability income

3    policy issued by Defendants. The agents and employees of Defendants represented that in exchange

4    for the payment of an agreed premium, Defendants would provide long term disability income

5    insurance to ROBBINS, providing benefits in the event that he became totally disabled from his

6    regular occupation. Based on the representations of the agents and employees of Defendants and

7    with the assurance that he would have peace of mind knowing that he would be covered economically

8    and financially in the event of physical or mental disability, ROBBINS reasonably relied on the

9    representations and was induced to enroll in a disability income policy with Defendants.

10        9.    LIFE INSURANCE COMPANY OF NORTH AMERICA, and/or, CIGNA issued

11    a group disability insurance policy through ROBBINS' employer, United Airlines, for which

12    ROBBINS' was enrolled and paid premiums. Thereafter, on or about January 1, 2002,

13    METROPOLITAN LIFE INSURANCE COMPANY issued a group disability insurance policy,

14    group number 105037, for which ROBBINS' was enrolled and paid premiums.

15        10.    At all times herein relevant, and to the present, ROBBINS regularly and faithfully paid

16    premiums and performed each act required on his part to keep the policy in full force and effect. He

17    intended and expected thereby to be assured peace of mind and financial and economic security in the

18    event that he became totally or residually disabled from his regular occupation.

19        11.    From on or about July 1990 until July 1996, ROBBINS's regular occupation was an

20    aircraft mechanic employed United Airlines. In 1996, due to the serious and debilitating symptoms

21    caused by ROBBINS' diagnosed conditions of ankylosing spondylitis, colitis, elevated liver function

22    tests, hematuria, and other disabling conditions, ROBBINS transferred to a position as a business

23    analyst for United Airlines. Since March 2002, and continuing to the present, ROBBINS has been

24    totally disabled from his usual occupation within the meaning of the definition of "total disability"

25    contained in the Policy and in accordance with case law in the State of California construing the

26    meaning of the term "total disability." ROBBINS was diagnosed with ankylosing spondylitis, colitis,

- 3 -

COMPLAINT FOR DAMAGES

KNOX RICKSEN LLP
ATTORNEYS AT LAW
1721 WEBSTER STREET, SUITE ABC
OAKLAND, CALIFORNIA 94612-3018
TEL 510-285-2500

1   elevated liver functions tests, hematuria, and other conditions, which have and continue to cause

2   impairment that significantly affects his ability to perform the material and substantial duties of his

3   usual, or any, occupation with reasonable continuity.

4        12.   At all times herein relevant, ROBBINS was, and continues to be, under treatment by

5   or has acted at the direction of a medical doctor who is licensed to treat the conditions, as is required

6   under the terms and conditions of the policy. His primary treating physician, Niall E. Roche, M.D.,

7   a specialist in rheumatology, fully evaluated ROBBINS and holds the opinion that the pain level,

8   restrictions, and limitations occasioned by his ankylosing spondylitis, colitis, elevated liver function

9   tests, and hematuria, prevented ROBBINS from performing the material and substantial duties of his

10   regular occupation with reasonable continuity and that it will continue to disable him to the extent

11   that he will not be able to return to his regular, or any, occupation in the foreseeable future.

12   ROBBINS has not worked in his regular occupation, or any occupation, since March 2002, due to

13   the disabling effects of his condition, all of which is amply documented in his medical records.

14        13.   On or about September, 2002, ROBBINS filed a claim for disability income benefits

15   with defendants, and each of them, at which time he described his disability, provided the dates that

16   he was unable to work, and gave a detailed description of his regular occupational duties. Thereafter,

17   the handling of the claim on behalf of defendants, and each of them, was assigned to Paula Feener

18   (hereinafter "Feener"), a case management specialist for defendants. On or about October 15, 2002,

19   Feener wrote to ROBBINS, and indicated that benefits would not be forthcoming because additional

20   information was needed to substantiate ROBBINS' claim. Feener wrote that ROBBINS had until

21   November 1, 2002 to submit the requested additional information or the claim would be denied for

22   failure to submit proof of disability. Seven days before Feener's own deadline for ROBBINS to

23   respond, on October 24, 2002, Feener wrote to ROBBINS and stated the ROBBINS claim for long

24   term disability benefits was being denied because the medical information received does not

25   substantiate a disability the would prevent ROBBINS from his regular job or any other reasonably

26   appropriate job his employer could provide. Feener also wrote that, "Since we have not received any

- 4 -

COMPLAINT FOR DAMAGES

KNOX RICKSEN LLP

ATTORNEYS AT LAW
2101 WEBSTER STREET, SUITE 800
OAKLAND, CALIFORNIA 94612-3008
TEL: 510-343-2800

1  physical findings to support your diagnosis, we have no alternative but to disallow your claim for

2  LTD."

3    14.    On April 11, 2003, ROBBINS wrote to defendants appealing defendants' decision to

4  deny ROBBINS' claim for long term benefits, and enclosing a report from ROBBINS'

5  rheumatologist, Dr. Roche, dated January 15, 2003. Dr. Roche's January 15, 2003 report specifically

6  states that ROBBINS' diagnosis of ankylosing spondylitis was confirmed by x-ray and the finding of

7  a positive HLA B27. Dr. Roche's report dated January 15, 2003 also states that ROBBINS most

8  recent physical exam in December 2002, again revealed spinal changes consistent with ankylosing

9  spondylitis. Dr. Roche's prognosis for ROBBINS is that: "Mr. Robbins continues to have very

10  significant disability due to his ankylosing spondylitis and colitis despite adhering closely to treatment

11  recommendations. . . . Apart from the pain, stiffness, and limitation of motion due to ankylosing

12  spondylitis, he has significant symptoms due to his colitis. . . . I do not think that working on either

13  a part-time or full-time basis is realistic in the foreseeable future. I would be happy to discuss any

14  aspect of his condition with you at any time."

15    15.    On April 18, 2003, the defendants' Disability Appeals Unit acknowledged in writing

16  receipt of ROBBINS' appeal and additional information. Thereafter, on May 23, 2003, defendants'

17  Disability Appeals Unit in writing notified ROBBINS' that it needed an additional 45 days to render

18  a decision regarding ROBBINS' appeal, stating that the extension of time was necessary because an

19  independent medical physician is reviewing all medical information in ROBBINS' file.

20    16.    On June 19, 2003, Paul Gado, Procedure Analyst for defendants' Disability Appeals

21  Unit wrote to ROBBINS, stating that the original determination denying ROBBINS' claim for long

22  term disability benefits was appropriate. Gado's letter states that ROBBINS' file was reviewed by

23  a physician consultant who is board certified in Occupational Medicine and Internal Medicine.

24  Gado's letter also states that, "It should be noted that we received no documentation or medical

25  rational to support your inability to perform your normal job of a Business Analyst."

26    17.    On information and belief, and at all times relevant, Defendants systematically ignored

- 5 -

COMPLAINT FOR DAMAGES

opinions and documents which support ROBBINS' claim and instead have relied on opinions rendered by non-treating record reviewers who are employed by Defendants ostensibly as "consultants," yet are charged either expressly or impliedly with the task of concocting reasons to deny claims. As a matter of custom and practice, Defendants failed to conduct a reasonable investigation of the claim and based their decision to wrongfully deny ROBBINS benefits on the opinion or opinions of a biased in-house consultant, all for financial gain and in conscious disregard of their obligation under the law to ROBBINS.

18. At all times herein relevant, ROBBINS has been entitled to benefits under the policy issued by Defendants, and Defendants have been obligated to make such payments under said policies and under the laws of the State of California. To date, Defendants have made no payments of benefits to ROBBINS under said policies.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

As and for a separate and distinct First Cause of Action against Defendants, ROBBINS alleges:

19. ROBBINS realleges and incorporates by this reference each and every allegation of paragraphs 1 through 18, inclusive, herein.

20. Notwithstanding their obligation to do so, Defendants have failed and refused, and continue to fail and refuse, to pay ROBBINS monies owing to him, despite demand therefor. Said failures and refusals constitute a material breach of contract.

21. As a direct and proximate result of said breach, plaintiff was and continues to be damaged in a sum according to proof.

WHEREFORE, ROBBINS prays for judgment against Defendants, and each of them, as hereinafter set forth.

///

///

- 6 -

COMPLAINT FOR DAMAGES



## SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

As and for a separate and distinct Second Cause of Action against Defendants, ROBBINS alleges:

22.     ROBBINS realleges and incorporates by this reference each and every allegation of paragraphs 1 through 21, inclusive, herein.

23.     At all times herein relevant, Defendants agreed to act in good faith and deal fairly with ROBBINS when they entered into the policies and accepted premiums from him. Said defendants thereby assumed fiduciary obligations to him and agreed to abide by their fiduciary duties. Nevertheless, Defendants refused and failed to act in good faith and deal fairly with ROBBINS and breached their fiduciary obligations, as is set forth more particularly below.

24.     In the absence of a reasonable basis for doing so, and with full knowledge and/ or reckless disregard of the consequences, Defendants failed and refused to pay policy benefits as is required under the terms and conditions of the policy and the laws of the State of California. The failure to pay benefits under the aforementioned policies constitutes a wrongful withholding of benefits.

25.     Furthermore, Defendants, and each of them, engaged in and continue to engage in a course of conduct to further their own economic interests, in violation of their contractual and fiduciary obligations to ROBBINS, including, but not limited to:

        A.     Misrepresenting pertinent policy provisions and coverages;

        B.     Engaging in unreasonable delays in acting upon the claim;

        C.     Conducting an unreasonable and improper investigation of the claim;

        D.     Violating provisions of the California Insurance Code, including, but not limited to Section 791.03(h);

        E.     Violating the Unfair Claims Settlement Practices Regulations, California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Section 2695.1 et seq.;

///

- 7 -

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2101 WEBSTER STREET, SUITE 650
OAKLAND, CALIFORNIA 94612-3059
TEL: 510-285-2800



F.   Engaging in unfair claims practices in handling the claim of other similarly situated insureds; and

G.   Wrongfully and maliciously utilizing medical doctors for physical and mental examinations who are known to be biased towards the insurance industry for the purpose of fabricating a dispute, in violation of the above noted law;

H.   Wrongfully basing a claim decisions on in-house employee physicians hired to review charts, knowing that such physicians are biased in favor of the company, in violation of the above noted law ;

I.   Mis-characterizing in-house employee physicians as "independent contractors" to create the appearance of impartiality where it does not otherwise exist;

J.   Knowingly utilizing a definition of "total disability" inconsistent with well-established case law construing the term in the State of California; and

K.   Other unlawful, wrongful and unreasonable acts.

26.   On information and belief, said conduct was and is an instance of a larger pattern of conduct involving claims of other similarly situated insureds throughout the State of California and the United States within the past several years and up to the present.

27.   The above-described course of conduct was undertaken by Defendants without due regard for and with reckless and conscious disregard of the financial and emotional circumstances of ROBBINS and other insureds similarly situated.

28.   Defendants pursued said course of conduct intentionally, maliciously, in conscious disregard of the rights of ROBBINS, fraudulently, and/or with reckless disregard of the probability of causing ROBBINS emotional and mental distress, and at all times to further their own economic interests at the expense of ROBBINS's economic interests, mental health and well-being.

29.   As a direct and legal result of the aforementioned unreasonable and bad faith conduct of Defendants, and each of them, ROBBINS has suffered, and will continue to suffer in the future, damages under the policies issued by Defendants, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

30.   As a further direct and legal result of the unreasonable and bad faith conduct of

- 8 -

COMPLAINT FOR DAMAGES



Defendants, and each of them, ROBBINS was compelled to retain legal counsel to obtain benefits under said policies. Therefore, Defendants are liable to ROBBINS for those attorney fees reasonably and necessarily incurred by ROBBINS in order to obtain policy benefits in a sum to be determined at the time of trial.

31.   As a further and direct and legal result of the unreasonable and bad faith conduct of Defendants, and each of them, ROBBINS has suffered anxiety, worry, mental and emotional distress, all to his general damage in a sum to be determined at the time of trial.

32.   Defendants' conduct described herein was intended by said defendants to cause injury to ROBBINS or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of ROBBINS, which subjected him to cruel and unjust hardship in conscious disregard of his rights and was an intentional misrepresentation, deceit, or concealment of a material fact known to said defendants with the intention to deprive ROBBINS of money or to otherwise cause injury, such as to constitute malice, oppression, or fraud under California Civil Code Section 3294, thereby entitling ROBBINS to punitive damages in an amount appropriate to punish or set an example of Defendants.

33.   Defendants' conduct was undertaken by the corporate defendant's officers or managing agents, identified herein as DOES 21 through 50, inclusive, who were responsible for claims supervision and operations, underwriting, communications and/or decisions. The afore-described conduct of said managing agents and individuals was therefore undertaken on behalf of the corporate defendant. Said corporate defendant further had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized and approved by managing agents whose precise identities are unknown to plaintiff at this time and are therefore identified and designated as DOES 21 through 50, inclusive.

WHEREFORE, ROBBINS prays for judgment against defendants, and each of them, as hereinafter set forth.

///

- 9 -

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2101 WEBSTER STREET, SUITE 850
OAKLAND, CALIFORNIA 94612-3066
TEL: 510-285-2500



## THIRD CAUSE OF ACTION

### (Fraud)

As and for a separate and distinct Third Cause of Action against defendants, and each of them, ROBBINS alleges:

34.    ROBBINS realleges and incorporates by reference each and every allegation of paragraphs 1 through 33, inclusive, herein.

35.    In the policies issued by Defendants, it was represented that Defendants would, in the event of certain contingencies, pay monies to ROBBINS, with certain exceptions not relevant here. At the time said representations were made, defendants, and each of them, knew or should have known them to be false. The representations were made by said defendants to deceive and defraud ROBBINS.

36.    The representation of material facts to ROBBINS by defendants, and each of them, was false, in that said defendants did not intend to and do not intend to pay such monies, notwithstanding ROBBINS's entitlement thereto, pursuant to the terms and conditions of the policies and under the laws of the State of California.

37.    Defendants, and each of them, knew that said representations were false and fraudulent at the time they were made, and made such false and fraudulent representations to induce ROBBINS to rely thereon to his detriment. On information and belief, ROBBINS alleges that said defendants have made similar false and fraudulent representations to other insureds who have also justifiably relied thereon to their detriment.

38.    ROBBINS, at the time said representations were made, was ignorant of their falsity and believed them to be true.

39.    ROBBINS reasonably and justifiably relied on said representations, in view of the superior knowledge of defendants, and each of them, and the fiduciary relationship between the parties.

40.    Based upon said representations, ROBBINS was induced to enroll in the long term

- 10 -

COMPLAINT FOR DAMAGES



1  disability policy offered and/or underwritten by defendants, and to pay premiums therefor. Had

2  ROBBINS known the true facts, he would not have taken such action.

3      41.    As a direct and legal result of the conduct of defendants, and each of them, ROBBINS

4  has suffered, and will continue to suffer damages, plus interest, and other economic and consequential

5  damages for a total amount to be shown at the time of trial.

6      42.    As a further direct and legal result of the conduct of defendants, and each of them,

7  ROBBINS has suffered anxiety, worry, mental and emotional distress, all to his general damage, in

8  a sum to be determined at the time of trial.

9      43.    The conduct of defendants, and each of them, described herein was intended by such

10  defendants to cause injury to ROBBINS, or was despicable conduct carried on by the defendants with

11  a conscious disregard of his rights, subjected him to cruel and unjust hardship in conscious disregard

12  of his rights, and was an intentional misrepresentation, deceit, or concealment of a material fact

13  known to the defendants with the intention to deprive him of money, or to otherwise cause injury,

14  such as to constitute malice, oppression or fraud under California Civil Code Section 3294, thereby

15  entitling him to punitive damages in an amount appropriate to punish or set an example of defendants.

16                          **FOURTH CAUSE OF ACTION**

17                    **(Negligent Infliction of Emotional Distress)**

18      As and for a separate and distinct Fourth Cause of Action against defendants, and each of

19  them, ROBBINS alleges:

20      44.    ROBBINS realleges and incorporates by reference each and every allegation of

21  paragraphs 1 through 43, inclusive, as if set forth fully herein.

22      45.    Defendants knew, or should have known, that their failure to exercise due care in the

23  investigation and processing of ROBBINS' claim for benefits under the policy would cause each

24  cross-complainant herein severe emotional distress. At the time ROBBINS' appeal was denied,

25  defendants, and each of them, were fully aware that ROBBINS' medical condition was exacerbated

26  by stress and anxiety, and that stress and anxiety contributed to ROBBINS' overall lack of well-being,

- 11 -

KNOX RICKSEN LLP

ATTORNEYS AT LAW
3101 WEBSTER STREET, SUITE 400
OAKLAND, CALIFORNIA 94612-3008
TEL: 510-285-6200

1   yet defendants engaged in such conduct with reckless disregard of the probability of causing plaintiff

2   to suffer emotional distress and/or further aggravation of the medical condition causing his total

3   disability.

4        46.  As a direct and legal result of the wrongful conduct of defendants, and each of them, as

5   herein alleged, ROBBINS suffered and continue to suffer severe emotional distress and mental

6   suffering.

7        WHEREFORE, ROBBINS prays for judgment against defendants, and each of them, as

8   hereinafter set forth.

9                    **FIFTH CAUSE OF ACTION**

10                (Intentional Infliction of Emotional Distress)

11        As and for a separate and distinct Fifth Cause of Action against defendants, and each of them,

12   ROBBINS alleges:

13        47.   ROBBINS realleges and incorporates by reference each and every allegation of

14   paragraphs 1 through 46, inclusive, herein.

15        48.   In denying ROBBINS claim for benefits and in upholding said denial of benefits on

16   ROBBINS' appeal, defendants, and each of them, engaged in outrageous and unprivileged conduct

17   intended to cause ROBBINS to suffer emotional distress and further mental impairment. At the time

18   ROBBINS' appeal was denied, defendants, and each of them, were fully aware that ROBBINS'

19   medical condition was exacerbated by stress and anxiety, and that stress and anxiety contributed to

20   ROBBINS' overall lack of well-being, yet defendants engaged in such conduct with reckless

21   disregard of the probability of causing plaintiff to suffer emotional distress and/or further aggravation

22   of the medical condition causing his total disability.  Such conduct goes beyond the bounds of

23   decency and is regarded as atrocious and utterly intolerable in a civilized community such than an

24   average member of the community would immediately react in outrage. The extreme and outrageous

25   character of the conduct of defendants, and each of them, arises from the abuse of a position where

26   defendants, and each of them, have the power to affect ROBBINS' interests relative to the Policy.

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2101 WEBSTER STREET, SUITE 550
OAKLAND, CALIFORNIA 94612-3066
TEL: 510-286-2300



1  Defendants, and each of them, knew that when the appeal was denied that severe emotional distress

2  would result from their conduct; they, nevertheless, acted with a deliberate disregard of the

3  probability of such a result.

4      49.    As a direct and proximate result of the conduct of defendants, and each of them,

5  ROBBINS suffered and continues to suffer severe emotional distress, including, but not limited to,

6  highly unpleasant mental reactions such as fright, nervousness, anxiety, worry, mortification, shock,

7  depression, outrage, and humiliation.

8      WHEREFORE, ROBBINS prays for judgment against defendants, and each of them, as is

9  hereinafter set forth.

10                      **SIXTH CAUSE OF ACTION**

11      **(Violation of California Business and Professions Code Section 17200 et. seq.)**

12      As and for a separate and distinct Sixth Cause of Action against defendants, and each of them,

13  ROBBINS alleges:

14      50.    ROBBINS realleges and incorporates by reference each and every allegation of

15  paragraphs 1 through 49, inclusive, herein.

16      51.    Under California Business and Professions Code Section 17200 (hereinafter referred

17  to as "The Unfair Practices Act"), unfair competition is defined as "unlawful, unfair or fraudulent

18  business practice, and unfair, deceptive, untrue or misleading advertising ...."

19      52.    Under California Business and Professions Code Section 17203, "Any person

20  performing or proposing to perform any act of unfair competition within this state may be enjoined

21  in any court of competent jurisdiction. The court may make such orders or judgments, including the

22  appointment of a receiver, as may be necessary to prevent the use or employment by any person of

23  any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary

24  to restore any person in interest any money or property, real or personal, which may have been

25  acquired by means of such unfair competition."

26      53.    Defendants, and each of them, in engaging in the conduct described above, violated and

- 13 -

COMPLAINT FOR DAMAGES

KNOX RICKSEN LLP

ATTORNEYS AT LAW
2101 WEBSTER STREET, SUITE 630
OAKLAND, CALIFORNIA 94612-3099
TEL: 510-285-2500



continue to violate The Unfair Practices Act. On information and belief, the conduct described above is part of an on-going pattern of behavior or course of conduct. The conduct undertaken by defendants, and each of them, not only violates well-established law in the State of California, as is described above, but is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

WHEREFORE, ROBBINS prays for judgment against defendants, and each of them, as follows:

1.    Damages for the wrongful withholding of benefits under the policies issued by Defendants, plus interest, including prejudgment interest, and other economic and consequential damages, including but not limited to, all past benefits due, all future benefits, and the return of all premiums paid during the period of time that he rightfully should have been on premium waiver, in a sum to be determined at the time of trial;

2.    General damages for mental and emotional distress in a sum to be determined at the time of trial;

3.    Attorneys' fees incurred to obtain policy benefits in an amount to be determined at trial;

4.    Punitive and exemplary damages in an amount appropriate to punish or set an example of defendants;

5.    For costs of suit incurred herein; and

6.    For such other and further relief as the Court may deem just and proper.

Dated: June 18, 2004                    KNOX RICKSEN LLP

                                        By: _____
                                        James T. Gotch
                                        Attorneys for Plaintiff
                                        CHRISTOPHER ROBBINS

- 14 -

COMPLAINT FOR DAMAGES

Exhibit "B"

# SUMMARY PLAN DESCRIPTION
## FOR
## MANAGEMENT EMPLOYEES
## IN THE
## UNITED AIRLINES
## EMPLOYEE WELFARE BENEFIT PLAN

This Summary Plan Description ("SPD") is designed to provide you with a description of the United Airlines Employee Welfare Benefit Plan.

Unless otherwise mentioned, this SPD reflects the terms of the Plan that are applicable to individuals who are covered under the Plan on January 1, 2003, however, the SPD describes some of the significant Plan changes occurring during 2002. Please read this entire SPD carefully so you will understand the benefits offered by the Plan.

The Plan also covers other employee groups and a separate SPD is available for each employee group.

This SPD is a simplified description of the major features of the Plan and each of the benefit plans. Special situations which affect a limited number of employees may not be covered in this SPD. Each of the benefits described in this SPD is governed solely by the terms of a separate legal document or contract. If there is a conflict between this SPD and the Plan documents controlling the operation of the Plan, the Plan documents will govern.

# Section 1. General

If you are sick or disabled and unable to go to work, you may be eligible for income continuation in the form of Sick Leave Benefits and/or Long Term Disability Benefits. These benefits are designed to help replace your lost income during an illness or extended disability.

This Summary is intended to provide an overview of your sick leave and disability benefit and does not attempt to cover all details. In all cases, your rights and benefits, and those of your dependents and beneficiaries, are governed by the terms and conditions of the plans and group policies.

# Section 2. Sick Leave Benefit

The Sick Leave Benefit is designed to offer you continuing income if you are unable to work because of illness, injury, or pregnancy. Your Sick Leave Benefit is funded by the Employer through the United Air Lines, Inc.'s Sick Leave Trust.

**ELIGIBILITY AND COVERAGE**

You are automatically eligible for the Sick Leave Benefit as soon as you report for work as a regular full-time or regular part-time Management Employee.

You are entitled to use Sick Leave Benefits after the six-month anniversary of your employment with the Employer. To the extent you have sick leave credit and you are unable to work because of Sickness, you may use your sick leave credit and be paid for such leave.

**"SICKNESS" DEFINED**

"Sickness" means an actual illness, injury or pregnancy that prevents an employee from performing his or her job.

**SICK LEAVE CREDIT**

As a regular full-time Management Employee, you will be credited with four hours of sick leave for each month of employment during your first six months of employment. After your first six months of employment, you will be credited with eight hours of sick leave for each month of employment.

You will receive credit during your first month of employment only if you were employed for at least 15 days during such month. Thereafter, you will receive credit for each calendar month in which you are not on an unpaid leave of absence for the entire month.

If you are a regular full-time Management Employee, at the start of your second year of employment (measured from your anniversary date) you will have a total of 72 hours of sick leave credit, less any sick leave you

# DISABILITY BENEFITS

## TABLE OF CONTENTS

Section 1. General ................................................................................................................DI-1

Section 2. Sick Leave Benefit.................................................................................................DI-1

Section 3. Long Term Disability (LTD) Benefit ...................................................................DI-5

Section 4. Claims and Appeal Procedures.............................................................................DI-9

used during the first year. You will continue to accrue eight hours of sick leave credit for each month of service during which you receive pay from the Employer until your total sick leave credit reaches the maximum of 1,000 hours.

**PART-TIME EMPLOYEES**

As a regular part-time Management Employee, you will be credited with two hours of sick leave for each month of employment during your first six months of employment and four hours for each month of employment during your second six months of employment. Thereafter, on each January 1 the amount of your credit is recalculated. You will continue to accrue at a rate equal to eight hours per month multiplied by your part-time ratio. Your part-time ratio is the number of your straight time hours paid plus hours for ANP (absent with no pay) in the prior calendar year (or portion thereof) to total hours in a full time work schedule. The maximum number of sick leave credit hours you may accrue is 1,000 hours.

> **Example:** Assume that last year Sam had 1,400 straight time hours and 160 hours ANP, for a total of 1,560 hours. The ratio of 1,560 to 2,080, a full-time work schedule, is 75 percent. For the year, Sam will accrue six hours per month (75% x 8 hours = 6 hours).

**PAYMENT OF SICK LEAVE BENEFITS**

During the second six months of your employment you may use the sick leave credit accumulated during your first six months of employment, however, you will be paid at only one-half your regular base rate of pay. After one year of employment, sick leave will be paid in the case of actual Sickness up to the number of hours of your available sick leave credited at that time. Sick leave will be paid hourly based on your regular hourly base rate of pay.

You may not be paid for more time than is credited to you and the number of sick leave hours for which you are paid will be charged against the number of hours credited to you.

In no event will you be paid for unused sick leave hours credited to you.

**SUPPLEMENTAL SICK LEAVE**

If you exhaust your sick leave credit for a Sickness, then you will be eligible for supplemental sick leave. Supplemental sick leave is a payment of 60% of your regular base rate of pay for a period of time up to the continuous length of time that your regular sick leave has been paid. Supplemental sick leave is available only if your leave has not been interrupted by a return to work, and you are unable to work because of a Sickness. For employees in their second six months of employment, the supplemental sick leave benefit is 60% of one-half of their regular base rate of pay.

The total of the periods for which you receive pay for sick leave credited to you and you receive pay for supplemental sick leave is limited to 26 calendar weeks.

**PART-TIME EMPLOYEES**

Regular part-time Management Employees accrue supplemental sick leave at the same rate; however, payment is based on their rate of pay and their part-time schedule.

**LIMITATIONS AND EXCLUSIONS**

Sick Leave Benefits are not available for:

- dental or doctor's appointments, unless the dentist or doctor in question does not maintain office hours outside your scheduled work time,
- absence due to family illness, except in the case of certain contagious diseases where you might present a significant health risk to your fellow workers,
- absence as a result of illness or injury that is the result of employment on another job (moonlighting),
- absence that is produced by your failure or refusal to make a bona fide effort to recover, or
- Sickness occurring or continuing after commencement of a leave (including absent with no pay (ANP) status) or termination of employment with the Employer for any reason.

**WORKERS' COMPENSATION OR STATE DISABILITY BENEFITS**

If you receive State disability benefits (California, Hawaii, New Jersey, New York, Puerto Rico, and Rhode Island employees) or workers' compensation because of your absence for a period you received Sick Leave Benefits under the Plan, you must turn over such State disability benefits or any workers' compensation benefit payments to the Plan. The Plan will then restore your sick leave credits in connection with the absence to the extent that the restoration payments offset the Sick Leave Benefits paid. Such sick leave credit hours will be restored by dividing the amount of the restoration payment by the Participant's base rate of pay, rounded to the nearest hundredth of an hour.

**DOCTOR'S CERTIFICATE**

The Plan Administrator or its delegate *may* require a doctor's certificate before paying sick leave for absences due to non-occupational sickness in excess of three days and for absences due to occupational sickness or injury of any length. The Plan Administrator or its delegate *will* require a doctor's certificate before paying sick leave in excess of seven days, unless you are hospitalized, in which case the certificate will be required when you are released from the hospital.

The doctor's certificate must be from a licensed physician who is treating you and must provide the reason for and the expected duration

of the absence, including an anticipated return to work date. If you do not return by the anticipated return to work date, a new doctor's certificate will be required.

The Company's Medical Department, at its Regional Medical Offices, is responsible for reviewing medical documentation to determine whether or not payment of sick leave benefits is appropriate. The Medical Department may need to review any and all of the following:

- clarification or amplification of the doctor's certificate from its author,
- a report of an appropriate specialist's examination of you, or
- a clinical narrative report from your treating physician.

It is your responsibility to see that the required information is provided, and to cooperate with the requested interviews or examinations. If a clinical narrative report is requested, you must bear the cost of the report, if any.

**MEDICAL ARBITRATION**

If there is disagreement on medical conditions between your treating physician and the Company's physician, you may request medical arbitration by a disinterested third physician. If you request medical arbitration, the Company's physician and your physician will mutually agree upon a third physician to examine you. The Medical Department will arrange for the consultation. The decision of a majority of the physicians will be binding on the Plan and on you. You and the Company's Medical Department will each be responsible for one-half of the fee of the mutually agreed upon examiner.

**FILING A CLAIM**

Your manager must request payment of supplemental Sick Leave Benefits for you. Instructions for requesting payment of the supplemental Sick Leave Benefit are contained in Company Regulations 15-7.

To file a claim for Sick Leave Benefits you are required to request payment in writing on a PayCert Form provided by the Plan Administrator. The request must be filed with the Payroll Department (WHQPZ) not later than the pay period following your return to work.

**MISSTATEMENT OF FACTS**

The submission of a claim is a certification that the information is true, correct and complete. Falsified claims are void and falsifying a claim in any manner will result in a denial of benefits.

The Plan Administrator retains the right to recover any payments made on the basis of a falsified claim.

**OVERPAYMENTS**   The Plan Administrator has the right to recover any overpayment from the person to whom such overpayment was made and may reduce any benefits payable for any employee by the amount of any outstanding overpayment.

**LIMITATION ON BRINGING LEGAL ACTION**   You (or your beneficiary) must bring any legal action with respect to a claim for benefits within three years from the date on which you submitted a claim or when the claim was required to be submitted, whichever is earlier.

**WHEN COVERAGE ENDS**   Coverage for Sick Leave Benefits, including supplemental sick leave, ends when the first of the following events occurs:

- the day you are no longer an eligible Management Employee,
- the day you go on a leave (including absent with no pay (ANP) status) or
- the day you no longer work for the Employer.

## Section 3.  Long Term Disability (LTD) Benefit

The Long Term Disability (LTD) Benefit is designed to offer you continuing income if you are unable to work during an extended period of disability. Your LTD Benefit is provided pursuant to a group insurance policy issued by Metropolitan Life Insurance Company (MetLife).

**ELIGIBILITY AND COVERAGE**   If you are a regular full-time or regular part-time Management Employee and have completed one year of service with the entity that is your Current Employer, you are automatically enrolled in the LTD Benefit. Coverage is effective the day following your completion of one year of service with the entity that is your Current Employer or the date you become classified as a Management Employee, whichever is later. If you are absent (for example, sick leave, or absent with no pay (ANP) status) on that date, the effective date of your coverage is postponed until you have returned to the full performance of the duties of your job with the Employer.

You must notify the Payroll Department (WHQPZ) if you wish to cancel your LTD Benefit coverage. If you cancel your coverage and you wish to participate at a later date, you will be required to submit proof of your good health.

**CONTRIBUTIONS**   To receive LTD Benefit coverage, you must make contributions to the Plan through payroll deductions. These contributions are made on an after-tax basis.

The contribution rate is $.38 for each $100 of the first $20,000 of your Base Monthly Salary. The contribution rate is subject to change. The following chart shows some examples of the monthly contribution amount:

| Base Monthly Salary | Monthly Contribution |
|---|---|
| $ 2,000 | $ 7.60 |
| 4,000 | 15.20 |
| 5,500 | 20.90 |
| $20,000 or more | 76.00 |

For regular full-time Management Employees, your **Base Monthly Salary** is your base salary not including bonuses, commissions, overtime pay, or allowances. For regular part-time Management Employees, your Base Monthly Salary is your actual gross pay in each pay period.

During any time you are receiving LTD Benefits, you are not required to make contributions to the Plan to continue to receive coverage.

**BENEFIT AMOUNT**

The LTD Benefit provides you with a monthly payment based on your Base Monthly Salary.

For regular full-time employees your monthly benefit is based on your Base Monthly Salary in effect on the day you become disabled. For regular part-time employees your monthly benefit is based on the average of your Base Monthly Salary for the 12 months immediately before the month during which you became disabled.

The amount of your LTD Benefit is equal to the sum of:

- 65% of the first $2,000 of your Base Monthly Salary, **plus**
- 50% of the next $18,000 of your Base Monthly Salary, **less**
- certain amounts you may receive from other sources (see "Offsets" listed below).

**OFFSETS**

Your monthly LTD Benefit amount is reduced by any amounts you may receive from certain other sources, including:

- Workers' Compensation,
- Primary and dependent Social Security benefits awarded on account of your disability and without regard to age (including continuation of such benefits after age 65),
- State disability benefits (applies to California, Hawaii, New Jersey, New York, Puerto Rico, and Rhode Island),
- Payments under any other Employer-sponsored disability or sick leave plan, and



• Benefits from an Employer-sponsored defined benefit pension plan.

The amount of your monthly LTD Benefit will not be reduced by any increases (other than increases due to the correction of an error) in your offsetting benefits if such increases arise after your monthly LTD Benefit payments have started. MetLife may reduce benefits if the original calculation was based on estimated Social Security benefits.

---

**Example:** Suppose Sam's Base Monthly Salary is $2,600. If Sam becomes Totally Disabled, he will be provided the following amount of disability income, subject to offsets:

$2,000 at 65% or $1,300
plus
$ 600 at 50% or $ 300
TOTAL         $1,600

Sam's LTD Benefit amount is $1,600 a month.

Now suppose Sam receives a $400 monthly disability benefit from Social Security. In this case, his LTD Benefit amount of $1,600 is offset by his Social Security payment. Sam would be paid as follows:

$ 400 from Social Security
$1,200 from the LTD Benefit
$1,600 TOTAL

---

**PAYMENT OF BENEFIT**

You are entitled to receive LTD Benefits only if you become Totally Disabled on or after the effective date of your LTD Benefit coverage. LTD Benefit payments will begin on the 181st day you are Totally Disabled, provided you are under a doctor's care. You must file a claim for this benefit within 12 months of your last day at work. *(See Section 2, Sick Leave Benefit, for information about income continuation benefits before your LTD Benefit begins).*

If you work in California, Hawaii, New Jersey, New York, Puerto Rico or Rhode Island, you are also covered under a state disability plan.

**TOTAL DISABILITY DEFINED**

The term "Total Disability" or "Totally Disabled" means that during the first two years you receive LTD Benefits, you cannot do any part of your normal job with the entity that is your Employer. After two years of LTD Benefits, "Total Disability" or "Totally Disabled" means you cannot do any job for which you have the training, education, or experience. Metropolitan Life Insurance Company determines whether you are Totally Disabled, including the date of commencement of your

LTD Benefit payments.

**HOW LONG YOUR BENEFITS LAST**

If you are age 60 or younger when you become Totally Disabled, your LTD Benefit payments will continue until the earliest of:

- your 65th birthday,
- the date you are no longer Totally Disabled, or
- the date you are no longer under a doctor's care.

If your Total Disability begins on or after your 61st birthday, your benefits will continue according to the following schedule, or until you are no longer Totally Disabled or no longer under a doctor's care, whichever occurs first:

| Age at Disability | Maximum Number of Monthly Benefits |
|---|---|
| 61 | 48 |
| 62 | 42 |
| 63 | 36 |
| 64 | 30 |
| 65 | 24 |
| 66 | 21 |
| 67 | 18 |
| 68 | 15 |
| 69 or older | 12 |

If you die after receiving LTD Benefits for at least 90 consecutive days, a benefit equal to three times your monthly LTD benefit will be paid in a lump sum to your survivor. Your survivor is your spouse or your Qualified Domestic Partner, or, if you have no spouse, or Qualified Domestic Partner, your child or children under age 21. If you have no survivors, this benefit will be paid to your estate. *(See definition of Qualified Domestic Partner in Section 14 of the Medical Benefits summary.)*

**WHEN NEW BENEFITS MAY BEGIN**

If you are receiving LTD Benefits and return to work for fewer than 90 days, but are again unable to work because of the same or a related disability, you will immediately resume LTD Benefit payments.

If you return to work for longer than 90 days, or if your new disability is from an unrelated cause, you will have to wait 180 days before receiving new LTD Benefits.

**LIMITATIONS AND EXCLUSIONS**

LTD Benefits are not paid for disabilities resulting from:

- war, whether declared or undeclared, or any act of war,
- service in the Armed Forces of any country or international authority, or
- attempted suicide or intentionally self-inflicted injury while sane or insane.

**WHEN COVERAGE ENDS**

Your LTD Benefit coverage ends when the first of the following events occurs:

- you are no longer an eligible Management Employee,
- you no longer make required contributions, or
- the LTD Benefit or underlying policy is canceled. If, however, you are receiving LTD Benefit payments, those payments will continue for as long as you continue to be eligible and the LTD Benefit would otherwise be payable under the policy.

**FILING A CLAIM**

A claim for LTD Benefits must be filed within 12 months of your last day at work. You may file a claim by contacting the MetLife Customer Response Center at 1-888-825-3368.

## Section 4.  Claims and Appeal Procedures

Your claim for Sick Leave Benefits or Long Term Disability Benefits must be filed in the manner explained in their respective summaries above. After you submit a claim, the Claims Administrator, will review your claim and notify you of its decision to approve or deny your claim.

**INITIAL DETERMINATION**

Written notice will be provided to you within a reasonable period, not to exceed 45 days from the date you submitted your claim; except for situations requiring an extension of time because of matters beyond the control of the Claims Administrator, in which case the Claims Administrator may have up to two (2) additional extensions of 30 days each to provide you such notification. If an extension is needed, you will receive notice prior to the expiration of the initial 45 day period (or prior to the expiration of the first 30 day extension period if a second 30 day extension period is needed) stating the reason why the extension is needed and when a determination will be made. If an extension is needed because you did not provide sufficient information or filed an incomplete claim, the time from the date of the Claims Administrator's notice requesting further information and an extension until the Claims Administrator receives the requested information does not count toward the time period the Claims Administrator is allowed to notify you as to its claim decision.  You will have 45 days to provide the requested information from the date you receive the extension notice requesting

further information.

If your claim is denied in whole or in part, the notification of the claims decision will state the reason why your claim was denied and reference the specific Plan provision(s) on which the denial is based. If the claim is denied because the Claims Administrator did not receive sufficient information, the claims decision will describe the additional information needed and explain why such information is needed. Further, if an internal rule, protocol, guideline or other criterion was relied upon in making the denial, the claims decision will state the rule, protocol, guideline or other criteria or indicate that such rule, protocol, guideline or other criteria was relied upon and that you may request a copy free of charge.

**PROCESSING AND APPEAL OF CLAIMS**

For purposes of your appeal of a denied claim for LTD Benefits, the Claims Administrator, MetLife, has been delegated all of the rights, duties and responsibilities of the Plan Administrator and for LTD Benefit appeals any reference to Plan Administrator under this Section means MetLife.

**APPEALING THE INITIAL DETERMINATION**

If your claim is denied, you may appeal the decision. Upon your written request, the Plan Administrator will provide you free of charge with copies of documents, records and other information relevant to your claim. You must submit your appeal to the Plan Administrator at the address indicated on the claim form within 180 days of receiving an adverse decision on your initial claim. Appeals must be in writing and must include at least the following information:

- Name of employee
- Name of the Plan
- Reference to the initial decision
- An explanation why you are appealing the initial determination

As part of your appeal, you may submit any written comments, documents, records, or other information relating to your claim.

After the Plan Administrator receives your written request appealing the initial determination, the Plan Administrator will conduct a full and fair review of your claim. Deference will not be given to the initial denial, and for the Plan Administrator's review will look at the claim anew. The review on appeal will take into account all comments, documents, records, and other information that you submit relating to your claim without regard to whether such information was submitted or considered in the initial determination. The person who will review your appeal will not be the same person as the person who made the initial decision to deny your claim. In addition, the person who is reviewing the appeal

will not be a subordinate of the person who made the initial decision to deny your claim. If the initial denial is based in whole or in part on a medical judgment, the Plan Administrator will consult with a health care professional with appropriate training and experience in the field of medicine involved in the medical judgment. This health care professional will not have consulted on the initial determination, and will not be a subordinate of any person who was consulted on the initial determination.

The Plan Administrator will notify you in writing of its final decision within a reasonable period of time, but no later than 45 days after the Plan Administrator's receipt of your written request for review, except that under special circumstances the Plan Administrator may have up to an additional 45 days to provide written notification of the final decision. If such an extension is required, the Plan Administrator will notify you prior to the expiration of the initial 45 day period, state the reason(s) why such an extension is needed, and state when it will make its determination. If an extension is needed because you did not provide sufficient information, the time period from the Plan Administrator's notice to you of the need for an extension to when the Plan Administrator receives the requested information does not count toward the time the Plan Administrator is allowed to notify you of its final decision. You will have 45 days to provide the requested information from the date you receive the notice from the Plan Administrator.

If the claim is denied on appeal, the Plan Administrator will send you a final written decision that states the reason(s) why the claim you appealed is being denied and references any specific Plan provision(s) on which the denial is based. If an internal rule, protocol, guideline or other criterion was relied upon in denying the claim on appeal, the final written decision will state the rule, protocol, guideline or other criteria or indicate that such rule, protocol, guideline or other criteria was relied upon and that you may request a copy free of charge. Upon written request, the Plan Administrator will provide you free of charge with copies of documents, records and other information relevant to your claim.

**DISCRETIONARY AUTHORITY OF ADMINISTRATOR**

In carrying out its responsibilities under the Plan, the Plan Administrator shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.